IN THE UNITED STATES DISTRICT COURT FOR

THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Laramie Sterling Hinkle and Jarrod Hinkle,<br><br>Plaintiffs,<br><br>v.<br><br>Beckham County Board of County Commissioners ; Sheriff Scott Jay,  In His Individual Capacity; Deputy Sheriff Strider Estep, In His Individual Capacity; and others as-yet unknown,<br><br>Defendants. | Case No. CIV-15-497-M<br><br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

NOW COME Plaintiffs, Laramie Sterling Hinkle and his wife Jarrod Hinkle, by their counsel, Brently C. Olsson and Fintan L. Dooley, and for their causes out action against Beckham County Board of County Commissioners; Sheriff Scott Jay, In His Individual Capacity;   Deputy Sheriff Strider Estep, In His Individual Capacity; and others as-yet unknown.

**Introduction**

1.      This action is brought pursuant to 42 USC 1983 and 1985 enacted to redress the deprivation of Plaintiffs rights under color of State Law.

2.      This court has jurisdiction of the action pursuant to 28 USC Section 1331 and 1343.

3.      Venue is proper under 28 USC 1339(b).  On information and belief all or most of the parties Defendant in this controversy reside in this Judicial District.

4.      The events complained of are a continuous course of action conducted under color of state law from 2012 until 2015 including retaliations by State Actors in response to Laramie Hinkle's exercise of his First Amendment Rights.

5.      In order of occurrence: Interference with Police Chief Hinkle's relationship with his employers, the elected officials of Erick, Oklahoma, false arrest, strip search, incarceration, and continuous defamation by the Beckham County Sheriff Scott Jay by posting of **EXHIBIT 1** on the sheriff's internet website from 2012 to 2015 promising continued investigation of three felonies alleged to have been committed by Laramie Hinkle and were said to have occurred in this jurisdiction.

## Parties

6.      The Plaintiffs Laramie Sterling Hinkle and Jarrod Hinkle, husband and wife were at all times relevant to this controversy, residents of Erick, Beckham County, State of Oklahoma.

7.      The Defendants are and at all times relevant to this controversy, residents of Beckham County Oklahoma, acting through its Commissioners which, as governing body, failed to intervene and stop the violations of 1983 *et seq.* by its Sheriff and his staff.

8.      Sheriff Scott Jay, the incumbent sheriff of Beckham County had final policy making authority within the County of Beckham for law enforcement functions.

9.       Deputy Sheriff Strider Estep, acted at the direction of Sheriff Jay and violated the rights of the Plaintiffs as described hereinafter;

2

10.     Unknown persons who have aided and abetted the conspiracy of individual named Defendants Scott Jay and Strider Estep.

11.     All of the individual Defendants' acts and omissions described in this complaint constituted State Action committed under color of law and were within the scope of the officers' employments.


## Factual Allegations

12.     This 1983 Civil Rights claim arises out years of conflicts between the Erick, Oklahoma leaders and Beckham County Sheriff Scott Jay and more recently displayed as a continuous act of retaliation against then Eric Oklahoma Chief of Police Laramie Hinkle for his support of candidate for Beckham County Sheriff Glenn Wilhite.

13.     In November 2012 Sheriff Scott Jay won reelection.

14.     Six months later, May 2013, Wilhite and Hinkle suffered overt acts of retaliation for their exercise of First Amendment and suffrage rights.

15.     Wilhite's employer and a campaign contributor during the 2012 campaign was Jacob Needham. His trucking company provided Wilhite a company vehicle and made the candidate Wilhite a key man in the trucking company.

16.     In retaliation against Jacob Needham the Sheriff sent Needham's wife, Julie, text messages implying he would shut down Needham trucking Company by conducting daily safety and truck inspections unless Wilhite was charged with some crime.

17.     Jay's first attempt to coerce Needham to charge Wilhite was a felony arrest focused an attempt to frame Needham in a crime of theft of company fuel. Sheriff Jay's

attempt to frame Wilhite failed after the Oklahoma State Bureau of Investigation came to corporate headquarters and found nothing supporting Jay's accusations.

18.     Sheriff Scott Jay's second effort to frame Wilhite failed because Sheriff Jay's own staff refused to arrest Wilhite for theft of Jacob Needham's rifle. Needham forgot he had texted Wilhite acknowledging him as a trusted friend, and "Keep the 30-06 until we go hunting".

19.     Wilhite lost his job at Needham Trucking. Wilhite is now a deputy sheriff in a County south of Oklahoma City.

20.     On May 9, 2013 Sheriff Jay arranged a retaliatory false arrest, strip search and confinement of Hinkle in violation Hinkle's Fourth Amendment Rights.

21.     Hinkle was arrested by Deputy Strider Estep without warrant, accused of ***conspiracy, theft, transport, and hiding a Carolina licensed V-nose covered trailer in Beckham County, Oklahoma.***

22.     Deputy Strider Estep's investigation was contrived to be incomplete, failing to note that there may have been three different trailers; Hinkle had a ***flatbed trailer.*** Hinkle's father-in-law, Vaughn Keown, had long possessed the V-Nose covered trailer which was often parked in public view next to Keown's residence in Erick, Oklahoma.

23.     The same V-Nose listed in Deputy Estep's probable cause affidavit later proved to be rightfully in Keown's possession.

24.     Keown had used his covered trailer for years while he served his own fellowship, the Carpenters Church in Anderson, South Carolina.

25.    Although Keown's covered trailer was often parked in public view in Erick, Oklahoma, Deputy Strider Estep made no inquiries of Keown before arresting Hinkle. Keown was employed in the community. When his son-in-law was arrested, he fled.

26.    Deputy Strider Estep heard Keown declare "I own the V-nose trailer " and nevertheless arrested Hinkle without warrant after conferring with and receiving by way of his police radio the go ahead from Beckham County Sheriff Scott Jay or County Attorney, one or both.

27.    Deputy Estep's Probable Cause affidavit displays either recklessness or willful evasion of these facts:

            a.    Hinkle was not seen in possession of the V-nose trailer.

            b.    There was no urgency to arrest Hinkle.

            c.    Hinkle and his wife rented a home in Erick.

            d.    His older son was in kindergarten.

28.    The Beckham County attorney subsequently moved to dismiss the case because the Sheriff produced no evidence of Hinkle's role in the alleged theft, transport or hiding of the trailer.

29.    As of February 2015, the sheriff had continued to post Attachment 1, the story of Hinkle's arrest, on the Beckham County Sheriff's Official Internet Website.

30.    As a consequence of the adverse actions of the Defendants, Hinkle and his sister and business companion decided it necessary that he disassociated himself from their oilfield service business.

31.    Due to the false allegations and defamatory communication issued by Defendant Sheriffs, the Plaintiff, his wife, and their two sons were forced to move away

from Erick, Oklahoma.  They presently live in a work camp in the North Dakota oilfield. Hinkle is a truck mechanic.

COUNT I: FIRST AMENDMENT VIOLATION

These claims are brought pursuant to Section 1983 to address abuse of authority under color of State Law.

32.      All of the acts alleged herein against the Defendants and their collaborators, or acting in conspiracy with them or at their behest or direction were begun, to the best understanding of the Plaintiffs, in retaliation for Plaintiff Laramie Hinkle's support of a candidate for sheriff, Gail Wilhite who ran against Defendant Scott Jay and was defeated by Scott Jay in November 2012.

33.      The acts of retaliation against Plaintiffs for the exercise of their First Amendment rights began in 2012 and continued until at least February 12, 2015. See Attachment 1.

34.      Under the First & Fourteenth Amendments to the U.S. Constitution, the policies and practices as applied to Enforcement of Arrest Procedures described in this complaint are unconstitutional because they continuously intimidate the exercise of the right of assembly and exercise of right suffrage.

35.      The defendant, Sheriff Scott Jay and his Deputy Strider Estep and co-conspirators have adopted practices and procedures which violate due process, threatened and injured these Plaintiffs' right of suffrage and as a direct consequence also intimidate similarly situated political opponents of Scott Jay.

36.     Defendants' pattern and practice threaten similarly situated persons with arrest without warrant on the pretense of probable cause recited in recklessly prepared or intentionally falsified affidavits in support of arrests without warrant.

37.     The policy and practice of the sheriff constitutes an intentional choice to avail himself and his staff of ambiguities in case law and obtain the advantage of qualified immunity for acts which violate and suppress the Plaintiffs' First Amendment and suffrage rights.

38.     The policies and practices of the sheriff afford his deputies unbridled discretion and do not contain procedural safeguards necessary to protect citizens' exercises of their First Amendment rights against false arrest.

39. The policies and practices of the sheriff have a substantial chilling effect on the of First Amendment suffrage rights of the Plaintiffs and others not before the court.

40. As a result, the Defendants' intimidation of the Plaintiffs have caused the plaintiffs and others similarly situated, irreparable harm for which there is no adequate remedy at law.

41. As a legal consequence of the Defendants violation of the Plaintiffs' First and Fourth Amendment rights, the Plaintiffs are entitled to recover reputation damages, business losses and compensation for  severe emotional distress and anguish.

COUNT II: DEFENDANTS' ILLEGAL IMPRISONMENT OF LARAMIE HINKLE

By and for this cause of action, the Plaintiffs hereby incorporate herein by reference all foregoing allegations.

42.     The Defendants' arrest and incarceration of Laramie Hinkle was without legal justification. There was no probable cause and the Probable Cause Affidavit was

7

recklessly prepared and intentionally designed to avail the Defendants of the advantage of judicial preference to allow qualified immunity.

43.     Prior to handcuffing Plaintiff Laramie Hinkle, Deputy Estep had a phone conversation and came back and stated "I have just talked to the "DA" and we believe we have enough to make the arrest."

44.     After detaining Hinkle for four hours, Deputy Estep was told by Keown by phone that, "The trailer is mine." Hinkle said, "Great. I'm free to go." Estep said, "No. You stay here!" In compliance Hinkle replied, "OK." After that time Hinkle was being detained illegally.

45.     The circumstances of the illegal detention, search, and seizure display a practice and procedure of reckless or an intentional disposition to embarrass and inflict pain upon Laramie Hinkle.

46.     By detaining and handcuffing Hinkle in so public a place, the most prominent intersection in Erick Oklahoma, and thereafter causing him to be strip searched, booked, and incarcerated,   the defendants displayed a reckless or an intentional disposition to embarrass and destroy the reputation of Laramie Hinkle.

47.     The defendants continued their reckless or intentional conduct, embarrassed and inflicted pain upon Laramie Hinkle by him posting his mug shots in www.jailbirds.com and his name on NCIC (National Criminal Information Center).

48.      Beckham County state's attorney, Dennis A. Smith moved to dismiss cases CF –2013 – 226: *State v. Laramie Sterling Hinkle*, the three felonies, knowingly concealing stolen property, conspiracy, transporting stolen property and to the state on September 12,

2013 because the deputy sheriff Estep failed to appear at two probable cause hearings set for July 16, 2013 in one set thereafter.

49.     The case was dismissed without prejudice and Hinkle was obligated to pay $379.50 costs.

50.     Hinkle's defense counsel, Kenny R. Goza, twice asked Sheriff Jay and Beckham County attorney Smith to have Hinkle's records expunged and his name removed from the NCIC database so that Hinkle could obtain a concealed carry permit.  Beckham County Sheriff Jay and District Attorney Smith have without justification refused that request.

51.     As a consequence, former Chief of Police Hinkle, is not able to obtain a **conceal and carry permit** which is necessary for protection of himself and his family.

52.     Hinkle has lost the benefit of his good name, good reputation, a honorable profession as a law enforcement officer, income, life insurance and pension.

53.     Plaintiff Hinkle suffered the above losses because the Sheriff made a practice and policy of encouraging and/or directing his staff to avoid independent judicial review of their probable cause statements, and instead conduct warrantless arrests

54.     Sheriff Jay and his staff's other negligently or intentionally failed to prepare their case and failed to appear at Probable Cause hearings.

55.     From and after May 9 of 2013 until February 12, 2015 Defendant Sheriff Jay continued to violate the rights of Plaintiff Laramie Hinkle by making regular appearances on radio and television and in these appearances during which Sheriff Jay continuously denounced Hinkle as a corrupt person and a criminal.

56.     Until the removal of the webpage on some unknown date after February 12, 2015 Defendant Sheriff Jay continued to violate the rights of Plaintiff Laramie Hinkle by posting Attachment A on the Beckham County Sheriff's official Web Page, and therein continuously communicated the message that Laramie Hinkle was still under investigation for commission of three felonies.

57.     As a proximate result Plaintiff suffered financial damage as well as severe emotional distress and anguish.

COUNT III: FOURTEENTH AMENDMENT VIOLATION

UNREASONABLE SEARCH AND SEIZURE AND DUE PROCESS

Section 1983

58.      Plaintiffs hereby reallege and incorporate all of the foregoing paragraphs of this complaint.

59.      As described more fully above, Defendant Estep, in cooperation with the Sheriff Jay caused Hinkle to be arrested, strip searched and detained without cause. His mug shot and fingerprint to be placed in the national data bank of the NCIC and his good name to be damaged thereby.

60.     Although Defendant Sheriff Jay was not present at the time of Plaintiff's arrest, he is liable under this count because he established the policy and practice of allowing arrests without warrant of persons on felony charges without observing constitutionally required safeguards seeking independent judicial review.

61.     Defendant Sheriff Jay recklessly or negligently failed to protect the due process rights of Hinkle and others similarly situated persons by establishing a practice

and procedure which encouraged his deputies to avoid submitting their probable cause affidavits to a law trained individual.

62.    By policy and practice, the Sheriff encourages his deputies to arrest and charge felonies without seeking warrants.

63.    Sheriff Jay directed and contrived the arrest of Laramie Hinkle as a part of his campaign of retaliation and had targeted Laramie Hinkle for false arrest on a continuous basis from the moment in time in which he commanded Wilhite to withdraw from the election contest and he refused.

64.    Sheriff Jay directed and executed the conspiracy to falsely arrest Laramie Hinkle as retaliation for not only Wilhite's refusal to withdraw from the race for sheriff but also Laramie Hinkle's determination to support Wilhite's candidacy.

65.    As a result of these acts of misconduct, Plaintiff Laramie Hinkle suffered injuries as set forth herebefore.

66. As a proximate result Plaintiff suffered financial damage as well as severe emotional distress and anguish.

67.    The Defendants' actions were willful and wanton, undertaken recklessly or intentionally with malice and indifference to the Plaintiffs rights.

COUNT IV: FAILURE TO INTERVENE

Section 1983

68.    Plaintiffs hereby reallege and incorporate all of the foregoing paragraphs of this complaint.

69.     Deputy Sheriff Strider Estep and Deputy Sheriffs Brett Moore and Brian Baker were aware of Sheriff Jay's intent to retaliate against Laramie Hinkle because he had made those communications to his staff.

70.     Likewise other Beckham County elected officials in staff knew or should have known of the falsity of the three felony charges against Plaintiff Hinkle, knew or should have known of the constitutional violations would be caused by the policies and practices of Defendant Sheriff Scott Jay.

71.     Sheriff Jay encouraged his officers to arrest without warrant and to avoid submitting probable cause testimony or affidavits to independent judicial officers.

72.     Instead of assuring Hinkle of that due process, the practice of Sheriff Jay was to allow a layperson to review probable cause affidavits of deputies if ever they were prepared prior to arrests without warrant.

73.     Beckham County District Attorney Dennis Smith and his staff were aware of Sheriff Jay's policy and practices and also Sheriff Jay's habit and custom of retaliation against his political enemies.

74.     Beckham County District Attorney Dennis Smith and his staff were specifically aware of the retaliatory intentions of Sheriff Jay with respect not only to plaintiff Hinkle but also toward Gail Wilhite.

75.     As a result of the failures of those named here above and those whose identities will be discovered failed to intervene and prevent the violation of Plaintiff Hinkle's constitutional rights set forth both in the United States and Oklahoma constitutions. As a result of these defaults Plaintiffs suffered the injuries described herebefore.

76.     As a proximate result Plaintiff suffered financial damage as well as severe emotional distress and anguish.

77.     The misconduct described in this count was objectively unreasonable and the consequences known to flow therefrom occurred by reason of the reckless or intentional indifference to the Plaintiffs constitutional rights.

COUNT V: COUNTY LIABILITY - BECKHAM COUNTY

Section 1983

78.     Plaintiffs hereby reallege and incorporate all of the foregoing paragraphs of this complaint.

79.     Oklahoma Constitution provides as follows:

**Section II-11 – Officers Personal Attention to Duties – Intoxication**

"Every person elected or appointed to any office of trust or profit under the law of the State, or any ordinance of any municipality shall give personal attention to the duties of the office to which he is appointed.

80.     The Defendant Beckham County and its appointed and elected officials including but not limited to its commissioners and its clerk knew or should have known of Sheriff Jay's mental confusion, frequent in-patient treatments, and long-term absences from duty.

81.      The Defendant Beckham County and its appointed and elected officials, its County Commissioners and its Clerk knew or should have known of the policies and practices of Sheriff Jay which encouraged his officers to conduct felony arrests without obtaining review of those charges by an independent judicial officer.

82.     The Defendant Beckham County and its appointed and elected officials knew or should have known that the Sheriff Jay utilized Hinkle's and other similarly situated persons' constitutionally improper arrests to obtain mug shots, to publish photos with often unsubstantiated reports to www.jailbird.com .

83.     The Defendant Beckham County and its appointed and elected officials knew or should have known that the Sheriff Jay thereby present innocent persons in false light and did so to enhance his political stature.

84.     The Defendant Beckham County and its appointed and elected officials knew or should have known that the Sheriff Jay thereby intimidated First Amendment expressions and in the terms of the Oklahoma Constitution intimidated exercise of suffrage rights by Oklahoma citizens who feared libel posted on www.jailbird.com would incite slander of their good names.

85.     Sheriff Jay's libel of Laramie Hinkle was continuously published on the Beckham County official Sheriff's web page (Attachment A) from May of 2013 until at least February 12, 2015

86.     Sheriff Scott Jay directed his staff utilizing constitutionally deficient policies and practices in order to score high numbers of prosecutions in extort high numbers of guilty pleas to enhance his political stature.

87.     The Defendant Beckham County and its appointed and elected official's breaches of duty to intervene caused or contributed to the constitutional violations to which Plaintiff Hinkle and similarly situated persons experienced.

88.     The Defendant Beckham County and its appointed and elected officials failed to intervene and as a direct result Plaintiffs suffered the damages described herebefore.

14

89.     As a proximate result Plaintiff suffered financial damage as well as severe emotional distress and anguish.

90.     The misconduct of the county described in this count was objectively unreasonable and occurred either by intention or by willful indifference to Plaintiff Laramie Hinkle's constitutional rights.

## COUNT VI: CONSPIRACY

### Section 1983

91.     Plaintiffs hereby reallege and incorporate all of the foregoing paragraphs of this complaint.

92.     As described more fully above, Defendant Sheriff Scott Jay and Deputy Strider Estep, acting in concert with other unknown co-conspirators have conspired by concerted action to accomplish unlawful purposes by unlawful means.

93.     In furtherance of the conspiracy, each of the co-conspirators has committed overt acts and otherwise willfully participated in joint activity.

94.     The misconduct described above was undertaken with malice, willfulness, and reckless indifference to the rights of others.

95.     As a proximate result of the conspiracy Plaintiff suffered financial damage as well as severe emotional distress and anguish.

WHEREFORE Plaintiffs Laramie and Jerrod Hinkle respectfully request that the court enter judgment in their favor against all defendants for compensatory damages, for an amount in excess of seventy-five thousand dollars ($75,000.00),  including loss of

income, pension and health insurance and attorney fees as well as punitive damages against all of the defendant officers in their individual capacities and in their official capacities, together with any other relief that this court deems just and appropriate including an order:

1)    Barring the posting of any elaboration or modification of the Sheriff's web page (Attachment 1) which was last posted as late as February 12, 2015; and

2)    Directing Defendant Sheriff Scott Jay and District Attorney Smith to immediately remove Hinkle's name from NCIC so that former Chief of Police Hinkle may obtain a conceal and carry permit.

JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted this 7th day of May,  2015.

**ATTORNEY LEIN CLAIMED.**

Respectfully submitted,

**CHEEK LAW FIRM**

s/Brently C. Olsson
BRENTLY C. OLSSON, OBA #12807
R. LAWSON VAUGHN, OBA #21557
311 North Harvey, Suite 200
Oklahoma City, OK 73102
(405) 272-0621

(405) 232-1707 - FAX
bolsson@cheeklaw.com
lvaughn@cheeklaw.com


Fintan L. Dooley
Attorney for Plaintiffs
220 North 4th Street
Bismarck, ND 58501
Phone: 414-731-0520
Email: findooley@gmail.com