# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LARMIE STERLING HINKLE and JARROD HINKLE, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. CIV-15-497-M ) |
| BECKHAM COUNTY BOARD OF COUNTY COMMISSIONERS, SHERIFF SCOTT JAY, in his individual Capacity, DEPUTY SHERIFF STRIDER ESTEP, in his individual capacity, and OTHERS AS – YET UNKNOWN, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendant Beckham County Board of County Commissioners' ("Beckham County") Special Appearance and Motion to Dismiss Plaintiffs' First Amended Complaint and Supporting Brief, filed November 9, 2015. On December 14, 2015, plaintiffs responded, and on December 21, 2015, Beckham County replied. Also before the Court is Defendants Jay and Estep's Motion to Dismiss and Brief in Support, filed November 16, 2015. On December 14, 2015, plaintiffs responded, and a review of the file shows no reply has been filed. Based on the parties' submissions, the Court makes its determinations.

I.  Introduction[1]

Plaintiffs allege that this action arises out of years of conflict between Erick, Oklahoma leaders and defendant, Beckham County Sheriff Scott Jay ("Jay"), and specifically between Jay and former Erick County Chief of Police, plaintiff Larmie Hinkle ("Hinkle"), for Hinkle's support of candidate Glenn Wilhite ("Wilhite") for Beckham County Sherriff. Jay was reelected

---

[1] The facts set forth are alleged in plaintiffs' Amended Complaint.

Sheriff of Beckham County in or around November of 2012, and plaintiffs specifically allege that, six months later, both Hinkle and Wilhite suffered overt acts of retaliation, from Jay, for the exercise of their First Amendment and suffrage rights.

Plaintiffs allege that Jay retaliated against Jacob Needham ("Needham"), Wilhite's employer and campaign donor, by sending text messages to Needham's wife implying that he would shut down Needham's trucking company, by conducting daily safety and truck inspections, unless Wilhite was charged with a crime. Plaintiffs specifically allege that Jay's first attempt at charging Wilhite with a crime centered on a felony arrest based on an allegation that Wilhite had stolen company fuel. Plaintiffs allege this charge failed after the Oklahoma State Bureau of Investigations found nothing to support Jay's accusations. Plaintiffs allege that Jay's further attempt to arrest Wilhite failed when Jay's staff refused to arrest Wilhite for theft of Needham's rifle. Plaintiffs further allege that Wilhite lost his job at Needham Trucking and now is employed as a deputy sheriff in a county south of Oklahoma City.

Further, plaintiffs allege on May 9, 2013, Jay arranged a retaliatory false arrest, strip search, and confinement of Hinkle in violation of his Fourth Amendment rights. Plaintiffs specifically allege that defendant Deputy Strider Estep ("Estep") arrested Hinkle, without a warrant, and accused Hinkle of conspiracy, theft, transport, and hiding a Carolina licensed V-nose covered trailer in Beckham County, Oklahoma. Plaintiffs further allege that the Beckham County District Attorney subsequently moved to dismiss the charges against Hinkle, because Jay produced no evidence of Hinkle's role in the alleged theft, transport, or hiding of the trailer. Further, plaintiffs allege that as late as February 2015, Jay continued to post the story regarding Hinkle's arrest on the Beckham County Sheriff's Official Website.

Plaintiffs allege that because of his arrest, Hinkle disassociated himself from plaintiffs' oilfield business, because Hinkle's business contacts openly questioned his integrity after it was made known that he had been arrested. Further, plaintiffs allege that due to false allegations, negligent misrepresentation, and defamatory communication by Jay, in his official capacity, plaintiffs were forced to move, with their two sons, away from Erick, Oklahoma and presently live in a work camp in a North Dakota oilfield, where Hinkle is a truck mechanic.

Plaintiffs now allege the following 42 U.S.C. § 1983 ("Section 1983") causes of action against defendants: (1) Count I: First Amendment Violation; (2) Count II: Defendants Illegal Imprisonment of Laramie Hinkle[2]; (3) Count III: Fourteenth Amendment Violation Unreasonable Search and Seizure and Due Process; (4) Count IV: Unconstitutional Strip Search[3]; (5) Count V: Approval and Ratification of Unconstitutional Conduct; and (6) Count VI: Conspiracy to Deprive Hinkle of His Civil Rights. Further, plaintiffs allege the following tort claims against defendants: (1) false imprisonment; (2) defamation; (3) intentional infliction of emotional distress; (4) tortious interference with contractual relationship; and (5) false light. All defendants now move this Court for an order dismissing all of plaintiffs' claims alleged against

---

[2] From a reading of plaintiffs' Amended Complaint, the Court understands this claim to be a Fourth Amendment violation. *See* Am. Compl. ¶ 21 ("On May 9, 2013 Sheriff Jay arranged a retaliatory false arrest, strip search and confinement of Hinkle in violation of Hinkle's Fourth Amendment Rights [sic].")

[3] On the same date as this Order, the Court denied plaintiffs' motion to amend complaint. In their motion to amend, plaintiffs sought to add Deputy Jason Atwood ("Atwood") as a defendant party and allege in Count IV that Atwood illegally stripped search Hinkle. However, the Court found that plaintiffs' amendment would be futile because the statute of limitations bars plaintiffs' claim against Atwood. A review of plaintiffs' Amended Complaint reveals that it appears plaintiffs were only alleging Count IV against Atwood, as plaintiffs did not incorporate the previous paragraphs of the Amended Complaint in this cause of action, nor did plaintiffs allege this cause of action against any other defendant. Therefore, the Court finds that Count IV should be dismissed for failure to state a claim upon which relief can be granted.

them, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

II.     Standard for Dismissal

Regarding the standard for determining whether to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal quotations and citations omitted). Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. at 678 (internal quotations and citations omitted). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Finally, "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true

and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

III. Discussion

    A. Claims against Beckham County

        i. Sufficient notice pursuant to Federal Rule of Civil Procedure 8(a)(2)

Beckham County initially asserts that plaintiffs have failed to provide fair notice under Federal Rule of Civil Procedure 8(a)(2) of the claims alleged against Beckham County and, therefore, plaintiffs' claims should be dismissed. Specifically, Beckham County contends that plaintiffs' group accusations against defendants fail to meet the required pleading standards. Plaintiffs contend they have pled sufficient facts to put Beckham County on notice and to allow the Court to draw a reasonable inference of the claims alleged against Beckham County.

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Having carefully reviewed plaintiffs' Amended Complaint, and presuming all of plaintiffs' factual allegations are true, and construing them in the light most favorable to plaintiffs, the Court finds that plaintiffs' Amended Complaint provides Beckham County with notice of the claims being alleged against it. Specifically, the Court finds that while plaintiffs' Amended Complaint does not specifically identify Beckham County in their causes of action, plaintiffs do allege that Jay, as sheriff, "adopted practices and procedures" which gave rise to plaintiffs' Section 1983 causes of action against Beckham County. The Court finds these allegations made throughout the Amended Complaint were sufficient to give Beckham County notice of the claims alleged against it.

## ii. Section 1983 claims

"A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Further,

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City,* 627 F.3d 784, 788 (10th Cir. 2010) (citing *Brammer–Hoelter v. Twin Peaks Charter Acad.,* 602 F.3d 1175, 1189–90 (10th Cir. 2010)) (internal quotations omitted).

Beckham County contends that plaintiffs have failed to establish that it is liable for plaintiffs' Section 1983 claims. Specifically, Beckham County asserts that plaintiffs' claims arise out of a single allegation that Jay retaliated against Hinkle for supporting Jay's opponent, Wilhite, for sheriff and, further, that plaintiffs do not identify a specific policy or custom established by Beckham County that would support liability under Section 1983. Plaintiffs contend that events alleged in their Amended Complaint occurred over a span of three years and

that Jay, as Sheriff of Beckham County, and, therefore, as final policymaker, caused liability for Beckham County by ratifying the retaliatory and unconstitutional actions alleged by plaintiffs.

Having carefully reviewed plaintiffs' Amended Complaint, and presuming all of plaintiffs' factual allegations are true, and construing them in the light most favorable to plaintiffs, the Court finds that, at this stage of the litigation, plaintiffs have sufficiently pled plausible Section 1983 claims against Beckham County. Specifically, the Court finds that Jay, as Sheriff of Beckham County, had final policymaking authority of law enforcement practices and procedures within the county. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n. 12 (1986) ("[D]ecisions with respect to law enforcement practices, over which the Sheriff *is* the official policymaker, *would* give rise to municipal lability"); *see also Myers*, 151 F.3d at 1319, (where the Tenth Circuit determined that "[i]f the [sheriff's] decision – the decision to enter the apartment – resulted in a constitutional violation, the County would be liable.").

Further, the Court finds that Jay's actions, as Sheriff, were not just isolated to one incident. Plaintiffs allege that Jay's actions against Hinkle started back in May of 2013 and continued up and until as late as February 2015. Further, plaintiffs allege incidents where Jay, as Sheriff, took actions against Wilhite, which plaintiffs allege resulted in Wilhite losing his job, and against Needham, which plaintiffs allege required Needham to cooperate with Jay's action or Jay would harm Needham's business. The Court further finds that plaintiffs have sufficiently pled facts demonstrating Jay's actions, as Sheriff, were the moving force behind Hinkle's alleged constitutional depravations. Specifically, plaintiffs allege:

> On May 9, 2013 Sheriff Jay arranged a retaliatory false arrest, strip search and confinement of Hinkle in violation of Hinkle's Fourth Amendment [sic] Rights.

7

> Hinkle was arrested by Deputy Strider Estep without warrant, accused of ***conspiracy, theft, transport, and hiding a Carolina licensed V-nose covered trailer in Beckham County, Oklahoma.***
>
> The Beckham County District Attorney subsequently moved to dismiss the case because the Sheriff produced no evidence of Hinkle's role in the alleged theft, transport or hiding of the trailer.
>
> As of February 2015, the sheriff had continued to post . . . , the story of Hinkle's arrest, on the Beckham County Sheriff's Official Internet Website.
>
> As a consequence of the adverse actions of the Defendants, Hinkle decided it necessary that he disassociated [sic] from their oil business. Hinkle's business contacts openly questioned his integrity after it was made known in the community that he had been arrested.

Plfs.' Am. Compl. ¶¶ 17-22, 29, & 35. The Court finds that plaintiffs' allegations specifically detail facts demonstrating that Jay used his law enforcement authority as Sheriff of Beckham County to infringe on Hinkle's constitutional rights. Therefore, the Court finds that plaintiffs' Section 1983 claims against Beckham County should not be dismissed.

### iii. Tort claims

> The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in The Governmental Tort Claims Act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of The Governmental Tort Claims Act for any act or omission of an employee acting outside the scope of the employee's employment.

Okla. Stat. tit. 51, § 153(A). "'Scope of employment' means performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . , but shall not include corruption or fraud . . . ." Okla. Stat.

8

tit. 51, § 152(12). Further, "in order to prevail on the particular tort claim sued upon, a plaintiff is **required, as a matter of law,** to show conduct on the part of a governmental employee that would mandate a determination the employee **was not** acting in good faith." *Fehring v. State Ins. Fund*, 19 P.3d 276, 283 (Okla. 2001). However, "[a]cts performed with 'reckless disregard' do not automatically rise to a level constituting malice or bad faith." *Gowens v. Barstow*, 364 P.3d 644, 652 (Okla. 2015).

In their response, plaintiffs contend that Beckham County is liable for the torts committed by Jay and Estep including: false imprisonment[4], defamation, intentional infliction of emotional distress, tortious interference with contractual relationship, and false light, because Jay and Estep were acting within the scope of their employment when they committed the torts. Beckham County contends that Jay and Estep could not have been acting within the scope of their employment because the torts alleged are torts that either require a lack of good faith or are barred by the Governmental Torts Claim Act ("GTCA"). Specifically, Beckham County asserts that to the extent plaintiffs claim Jay negligently or unintentionally made defamatory statements, those claims are barred pursuant to the GTCA and to the extent that plaintiffs' defamation claim hinges on the fact that Jay's defamatory statements were made maliciously, recklessly, or intentionally, the claim is barred because the statements were not made in good faith. As to plaintiffs' claims of intentional infliction of emotional distress, tortious interference with contractual relationship, and false light, Beckham County contends it is immune from these torts because they require either, intentional, malicious, or reckless conduct, all of which means defendants acted without good faith.

---

[4] Beckham County contends that plaintiffs' false imprisonment claim is time barred as it was alleged past the one year statute of limitations. Plaintiffs do not address Beckham County's contention in their response; therefore, the Court deems Beckham County's contention confessed and dismisses plaintiffs' tort claim for false imprisonment against all defendants in this action.

Having carefully reviewed plaintiffs' Amended Complaint, and presuming all of plaintiffs' factual allegations are true, and construing them in the light most favorable to plaintiffs, the Court finds that Beckham County is immune from liability for plaintiffs' tort claims alleged against Jay and Estep. Specifically, the Court finds the torts alleged by plaintiffs against Jay and Estep require either intentional or malicious conduct, precluding an act of good faith, and plaintiffs' claims of defamation are barred by the GTCA because plaintiffs claim Jay's statements were negligent misrepresentations. In their Amended Complaint, plaintiffs allege:

> That Sheriff Scott Jay individually and through employees of his agency, acting in the course and scope of their employment, did negligently post on the internet the news bulletin, attached as Attachment 1, which contained negligent misrepresentations of the status of Plaintiff Laramie Hinkle that was posted through March 2015.

*Am. Compl.* at ¶ 100: The Court finds that based on plaintiffs' allegation, Beckham County is immune from liability from plaintiffs' defamation claim, pursuant to Okla. Stat. tit. 51, § 155. *See* Okla. Stat. tit. 51, § 155(17) ("The state or political subdivision shall not be liable if a loss or claim results from: . . . Misrepresentation, if unintentional; . . .").

Further, the Court finds that plaintiffs' other tort claims all require an element of intent or maliciousness which precludes acting in good faith. *See Gaylord Entm't Co. v. Thompson*, 958 P.2d 128, 149 (Okla. 1998) ("An action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress."); *see also Tuffy's, Inc. v. City of Okla. City*, 212 P.3d 1158, 1165 (Okla. 2009) (Where the Oklahoma Supreme Court found that the terms malicious interference, intentional interference, and tortious interference are all used interchangeably in Oklahoma jurisprudence, and all require a showing of an intentional act which contains "some degree of bad faith on the part of the tortfeasor."); *see also Tanique, Inc. v. State ex rel. Okla. Bureau of Narcotics and Dangerous*

*Drugs*, 99 P.3d 1209, 1217 (Okla. Civ. App. 2004) (In regards to false light, "[t]he Oklahoma Supreme Court has explained that the third element—the defendant must have knowledge of or act in reckless disregard as to the falsity of the publicized matter or the attendant false light—is the equivalent of . . . actual malice [and] must be proven with convincing clarity by showing that the defendant had a high degree of awareness of probable falsity or in fact entertained serious doubts as to the truth of the publication . . . such conduct is inconsistent with good faith and state employees who engage in such conduct would be outside the scope of their employment.") (internal quotations omitted). Therefore, the Court finds that plaintiffs' tort claims should be dismissed as to Beckham County.

    iv. Punitive damages and attorney's fees.

In their Amended Complaint, plaintiffs seek punitive damages against Beckham County. Beckham County contends that plaintiffs are barred from pursuing punitive damages against it; a contention that plaintiffs did not address; therefore, the Court deems Beckham County's contention confessed by plaintiffs and bars plaintiffs from seeking punitive damages against Beckham County. Further, Beckham County seeks attorney fees from plaintiffs for the cost incurred in preparing this motion; however, the Court finds that assessing plaintiffs attorney fees would not be appropriate since Beckham County is still a party in this matter.

  B. Claims against Jay and Estep

Jay and Estep contend that (1) plaintiffs' false imprisonment claim should be dismissed because it is barred by the statute of limitations; (2) the Amended Complaint fails to state any claim for relief against Jay and Estep on behalf of plaintiff Jarrod Hinkle; therefore, Jarrod

Hinkle should be dismissed from this lawsuit as a plaintiff[5]; and (3) plaintiffs have failed to set forth any facts that show Jay and Estep were acting outside the scope of their employment, and therefore, they should be dismissed from this lawsuit. Plaintiffs, in their response, contend that they have adequately pled a claim for false imprisonment in violation of Hinkle's Fourth Amendment rights and, further, that the Amended Complaint states sufficient facts to establish liability against Jay and Estep in their individual capacities.

Having carefully reviewed plaintiffs' Amended Complaint, and presuming all of plaintiffs' factual allegations are true, and construing them in the light most favorable to plaintiffs, the Court finds that plaintiffs have adequately pled Section 1983 claims for false imprisonment in violation of Hinkle's Fourth Amendment rights against Jay and Estep, and further, that plaintiffs have sufficiently pled facts demonstrating that Jay and Estep were acting in their individual capacities. In their Amended Complaint, plaintiffs allege

> The Defendants' arrest and incarceration of Laramie Hinkle was without legal justification. There was no probable cause and the Probable Cause Affidavit was recklessly prepared and intentionally designed to avail the Defendants to the advantage of judicial preference to allow qualified immunity.

Am. Compl. ¶ 48. The Court finds this specific allegation allows the Court to draw a reasonable inference that Jay and Estep violated Hinkle's Fourth Amendment rights. Further, the Court finds that while plaintiffs specifically alleged that Jay and Estep were acting within the scope of their employment with regards to plaintiffs' tort claims, the Court has already determined that all plaintiffs' tort claims either require an element of intent or maliciousness, or in the case of defamation, negligent misrepresentation, and, therefore, preclude Jay and Estep from acting within the scope of their employment. At this stage of the litigation, the Court finds that plaintiffs

---

[5] Plaintiffs failed to respond to this contention; therefore, the Court deems this contention confessed and dismisses plaintiff Jarrod Hinkle from this lawsuit.

have sufficiently pled their tort claims against Jay and Estep and, therefore, plaintiffs' tort claims against Jay and Estep should not be dismissed.

IV. Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Beckham County's Special Appearance and Motion to Dismiss Plaintiffs' First Amended Complaint and Supporting Brief [docket no. 8] as follows: (1) the Court DENIES Beckham County's motion to dismiss as to plaintiffs' Section 1983 claims against Beckham County and (2) the Court GRANTS Beckham County's motion to dismiss as to all tort claims alleged by plaintiffs in their Amended Complaint and DISMISSES all of plaintiffs' tort claims alleged against Beckham County in plaintiffs' Amended Complaint. Further, for the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendants Jay and Estep's Motion to Dismiss and Brief in Support [docket no. 12] as follows: (1) the Court GRANTS Jay and Estep's motion to dismiss as to dismissing plaintiff Jarrod Hinkle from this lawsuit and as to plaintiffs' tort claim for false imprisonment and DISMISSES plaintiff Jarrod Hinkle from this matter and plaintiffs' tort claim for false imprisonment against Jay and Estep, and (2) the Court DENIES Jay and Estep's motion to dismiss on all other grounds.

**IT IS SO ORDERED this 29th day of February, 2016.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE